# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **FEDERAL TRADE COMMISSION and UTAH DIVISION OF CONSUMER PROTECTION,**<br><br>    **Plaintiff,**<br><br>vs.<br><br>**ZURIXX, LLC, ET AL.,**<br><br>    **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:19CV713-DAK-DAO**<br><br>**Judge Dale A. Kimball**<br><br>**Magistrate Judge Daphne A. Oberg** |

  This matter is before the court on Defendants JSS Investment Ventures, LLC, JSS Trust, and Gerald Spangler ("Spangler Defendants") Motion to Dismiss [ECF No. 168]; Defendants Zurixx. LLC, CAC Investment Ventures, LLC, Carlson Development Group LLC, Carlson Development Group LLC (Puerto Rico), CJ Seminar Holdings, LLC, Dorado Marketing and Management LLC, Zurixx Financial, LLC, Zurixx Financial LLC (Puerto Rico), Christopher A. Cannon, James M. Carlson, and Jeffrey D. Spangler's ("Zurixx Defendants") Motion to Stay Proceedings Pending Supreme Court Cases [ECF No. 169]; and the Zurixx Defendants' Motion for Relief from Stipulated Preliminary Injunction Order and Motion to Stay Briefing [ECF No. 198]. On October 27, 2020, the court held a hearing on the first two motions. The third motion was filed three days after the hearing on the other motions, and the court will decide that motion on the briefs. At the hearing, Collot Guerard and Joshua Doan represented the Federal Trade

Commission ("FTC");  Robert G. Wing represented the Utah Division of Consumer Protection ("Division"); Brennan Moss represented the Spangler Defendants; and Loren Washburn and Ryan Pahnke represented the Zurixx Defendants.  After hearing argument, the court took the matters under advisement.  After carefully considering the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motions, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiffs brought the current action against Zurixx and its individual corporate officers and owners for operating a deceptive scheme to entice consumers into purchasing a sequence of increasingly expensive real estate investment training programs and related products that purport to allow consumers to make thousands of dollars in profit using the Zurixx system.  Zurixx and the individual leaders made more than $530 million selling these investment products to at least 70,000 consumers.

The three individual corporate officers and owners of Zurixx–Jeffrey Spangler, James Carlson, and Christopher Cannon--did not own Zurixx directly.  Rather, each held his ownership interest through a chain of limited liability companies and, in the case of Jeffrey Spangler, also a Utah trust.  Plaintiffs' First Amended Complaint added four such LLCs, Spangler's trust, and the trustee of the JSS Trust in order to increase the likelihood of obtaining complete relief against the Zurixx enterprise.

The entities tied to Jeffrey Spangler, Zurixx's president, are JSS Ventures, JSS Trust, and Gerald Spangler, trustee of JSS Trust and Jeffrey Spangler's father.  The First Amended Complaint alleges that Jeffrey Spangler is an officer of Zurixx, LLC, a manager of CJ Seminar, a

member and manager of JSS Ventures, and the grantor of the JSS Trust. The JSS Trust and Jerry Spangler own JSS Ventures. JSS Ventures, in turn, is alleged to be a member of both CJ Seminar and Dorado Marketing and Management, Zurixx's Puerto Rico counterpart. CJ Seminar is alleged to be a member of Zurixx and Brand Management. The JSS Trust has ownership interests in JSS Ventures, CJ Seminar, and Zurixx because the JSS Trust owns JSS Ventures, JSS Ventures is a member of CJ Seminar, and CJ Seminar is a member of Zurixx. Jeffrey Spangler controls these trust assets as a member and manager of JSS Ventures, a manager of CJ Seminar, and president of Zurixx. Gerald Spangler is the trustee of JSS Trust and holds legal title to all of JSS Trust's assets, including Zurixx and Dorado through CJ Seminar and JSS Ventures. JSS Ventures and the JSS Trust are associated with each Corporate Defendant other than the LLCs through which Cannon and Carlson hold their ownership interest in Zurixx.

For the remainder of the First Amended Complaint, JSS Ventures and JSS Trust are grouped together with the Zurixx Defendants and all allegations refer to the collective group. The First Amended Complaint alleges that all the Defendants operated as a common enterprise because they "conducted the business practices described through an interrelated and interdependent network of companies" with "a common business purpose, ownership, officers, managers, members, business functions, and office locations." Each defendant is alleged to have played a role in Zurixx's common business purpose of making money for the enterprise's principals.

## Spangler Defendants' Motion to Dismiss

The Spangler Defendants move to dismiss the claims asserted against them in Plaintiffs' First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing

that Plaintiffs have not alleged enough facts to support their legal conclusion that the Spangler Defendants were part of a common enterprise. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In deciding whether the plaintiff has stated a claim for relief," courts "view the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff], accepting the plaintiff's well-pled facts as true and drawing all reasonable inferences in the non-moving party's favor." *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019).

The Spangler Defendants contend that Plaintiffs have failed to allege any facts to support a claim that JSS Ventures, the JSS Trust, and Gerald Spangler operated as a common enterprise with the Zurixx Defendants. As a general rule, a corporate entity may be liable for the deceptive acts and practices of other corporate entities where the "corporate entities operate as a common enterprise." *FTC v. LoanPointe, LLC*, NO. 2:10CV225DAK, 2011 WL 4348304, at *10 (D. Utah Sept. 16, 2011), *aff'd* 525 F. App'x 696 (10th Cir. 2013). "Where the same individuals transact business through a maze of interrelated companies, all of them may be held liable as a joint enterprise." *Id.* "A common enterprise may exist where companies share common control, office space, employees, interrelated funds, and other factors." *Id.*

Courts look at several factors in determining whether a common enterprise has been sufficiently pled. One district court has recognized, in denying a Rule 12(b)(6) motion

4

challenging the pleading of a common enterprise, that "no one factor is controlling. In fact, federal courts routinely consider a variety of factors." *FTC v. Wyndham Worldwide Corp.*, No. 13-1887-ES, 2014 WL 2812049, at *7 (D.N.J. June 23, 2014). The court observed that "when determining whether a common enterprise exists, the pattern and frame-work of the whole enterprise must be taken into consideration." *Id.* at *5. The Ninth Circuit has explained that "entities constitute a common enterprise when they exhibit either vertical or horizontal commonality." *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43 (9th Cir. 2010).

Courts have also considered whether the companies "were under common ownership," "whether they pooled resources," "whether they shared . . . employees, and email systems, and whether they jointly participated in a 'common venture' in which they benefitted from a shared business scheme or referred customers to one another." *FTC v. Network Servs. Depot*, 617 F.3d 1127, 1142-43 (9th Cir. 2010). Another court in this district recently analyzed these factors in *FTC v. Nudge, LLC*, in which the court found that common enterprise liability had been sufficiently pled where the complaint alleged that defendants "all share a principal place of business," "share a common control and ownership structure," and "transferred millions of dollars between bank accounts" belonging to defendants. 430 F. Supp. 3d 1230, 1240 (D. Utah 2019).

The First Amended Complaint details the overlapping ownership, management structure, and business purpose among the Spangler Defendants and the corporate Zurixx Defendants–Zurixx, Dorado, CJ Seminar, and Brand Management. Plaintiffs allege that the individual defendants running the Zurixx enterprise have transacted business through a maze of interrelated companies, which constitutes a common enterprise exhibiting both vertical and

5

horizontal commonality. The Spangler Defendants improperly ask this court to treat certain nondispositive common enterprise factors as dispositive and ignore the overlapping ownership, control, and business purpose that the Plaintiffs do allege.

The Spangler Defendants mischaracterize the First Amended Complaint when they claim that they are "tenuously and nebulously" associated with one of the other defendants–Jeffrey Spangler. Jeffrey Spangler is a member and manager of JSS Ventures and the grantor of the JSS Trust. The Spangler Defendants are associated with Defendants other than Jeffrey Spangler, namely with Zurixx, Dorado, CJ Seminar, and Brand Management, because they hold direct or indirect ownership interests in those four LLCs.

The Spangler Defendants wrongly claim that the only paragraph in the First Amended Complaint that alleges anything specific relating to JSS Ventures is paragraph 26. Paragraph 32 expressly refers to Jeffrey Spangler's role in JSS Ventures. In addition, the paragraphs pertaining to entities JSS Ventures directly or indirectly owns relate to JSS Ventures as well. The First Amended Complaint sufficiently details the role JSS Ventures and its subsidiaries played in the Zurixx enterprise.

The Spangler Defendants mischaracterize the First Amended Complaint by contending that Plaintiffs have failed to allege facts identifying who the officers and managers of JSS Ventures are and that Plaintiffs cannot tie the control or management structure of JSS Ventures to that of any other defendant. Paragraph 32 alleges that Jeffrey Spangler is a manger of JSS Ventures, just as he is the president of Zurixx, and a manager of CJ Seminar.

Plaintiffs also allege that Jeffrey Spangler controls JSS Trust assets. Plaintiffs allege in the First Amended Complaint that JSS Trust has an ownership interest with Jeffrey Spangler in

6

JSS Ventures, CJ Seminar, and Zurixx because JSS Trust owns JSS Ventures, JSS Ventures is a member of CJ Seminar, and CJ Seminar is a member of Zurixx. Jeffrey Spangler allegedly controls those trust assets as a member and manager of JSS Ventures, a manager of CJ Seminar, and president of Zurixx.

The Spangler Defendants improperly ask the court to ignore the allegations relating to the interrelated network of entities comprising the Zurixx enterprise and focus instead on common enterprise factors that Plaintiffs have not alleged against them, such as common employees and common office space. These elements are not required. Moreover, shell companies can participate in a common enterprise. The evidence at trial could end up showing that JSS Ventures and JSS Trust are shell entities set up to hold Jeffrey Spangler's assets. If so, they would not be able to avoid common enterprise liability on the ground that they had no employees at all or no true business location. The evidence at trial could show that the New Mexico address to which JSS Ventures refers this court to is a residential address associated with an individual involved in this case. Such evidence would support a finding of interconnectedness, a characteristic of a common enterprise, not against it.

The law on common enterprise instructs the court to focus on whether "the same individuals transact business through a maze of interrelated companies." *LoanPointe*, 2011 WL 4348304, at *10. Plaintiffs need not prove any particular number of entity connections. The court can look at the pattern and framework of the whole enterprise. At this motion to dismiss stage, the court is not determining whether the Spangler Defendants actually operated a common enterprise. The determination of a common enterprise and joint and several liability will depend on what the evidence ultimately shows. The Spangler Defendants ask the court to construe all

inferences in their favor, which is exactly contrary to the proper standard on a motion to dismiss. The Spangler Defendants also argue that the court cannot "read anything into" the First Amended Complaint that is not there. However, the law clearly recognizes that inferences can be drawn from the allegations in complaints. It is part of the governing standard for analyzing a motion to dismiss. Considering the allegations of the First Amended Complaint and construing all inferences in favor of Plaintiffs, as the court is required to do at the motion to dismiss stage, the court concludes that the First Amended Complaint sufficiently and plausibly alleges that these Defendants are engaged in a common enterprise. The court, therefore, denies the Spangler Defendants' Motion to Dismiss.

## Zurixx Defendants' Motion to Stay Proceedings

The Zurixx Defendants ask the court to stay proceedings pending the Supreme Court's decision in *AMG Capital Management, LLC v. FTC*, No. 18-1501 (cert. granted July 9, 2020).[1] This motion is very similar to Defendants' request to stay proceedings pending *Liu v. SEC*, which the court previously denied because it dealt with the SEC Act not the FTC Act at issue in this case. The *AMG* case now before the Supreme Court relates to the FTC Act. At issue in *AMG* is whether Section 13(b) of the FTC Act, by authorizing injunctions, also authorizes monetary relief such as restitution or disgorgement–and, if so, the scope of the limits or requirements for such relief.

In *Liu v. SEC*, the court held that disgorgement under Section 13(b) of the SEC Act must be calculated using the wrongdoer's net profits, not gross or net revenue. 140 S. Ct. 1936, 1940-

---

[1] The Supreme Court also granted certiorari in *FTC v. Credit Bureau Center*, 937 F.3d 764 (7th Cir. 2019), a 7th Circuit case, and merged it into the *AMG* appeal from the 9th Circuit.

50 (2020). There are three possible outcomes in *AMG*. If the Supreme Court adopts the 7th Circuit's decision in *Credit Bureau Center*, 937 F.3d 764 (7th Cir. 2019), monetary relief could be eliminated almost altogether. If it follows what it did in *Liu*, the FTC's disgorgement authority would be limited to net profits, and such a result would require significant expert discovery. Third, the Supreme Court could affirm the Ninth Circuit's decision in *AMG* and allow the full amount of damages the FTC seeks.

In this action, the FTC seeks equitable monetary relief under Section 13(b). The amount of monetary relief in that claim could exceed $500 million, which is several million dollars more than the relief available under Plaintiffs' other claims. Given the amount of potential relief the FTC seeks in monetary relief under Rule 13(b), the Zurixx Defendants argue that a stay in this case will conserve the resources of the parties and the court while avoiding the wasted efforts that may be involved in proceeding under an uncertain legal framework. *Menchacho-Estrada v. Synchrony Bank*, No. 2:17CV831DAK, 2017 WL 4990561, at *1 (D. Utah Oct. 30, 2017). The Zurixx Defendants contend that proceeding with this case will result in a tremendous waste of party and judicial resources if the Supreme Court ultimately determines that the FTC is not entitled to seek monetary relief under Section 13(b).

Under the Supreme Court's guidance in *Landis v. North Am. Water Works & Elec. Co.*, 299 U.S. 248 (1936), "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255. A movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* In evaluating a stay request, courts typically consider whether the stay would

simplify the issues before the court, the stage of the litigation, and a balancing of prejudice to the parties. *Menchacha-Estrada v. Synchrony Bank*, No. 2:17CV831DAK, 2017 WL 4990561, at *1 (D. Utah Oct. 30, 2017).

*AMG* does not meaningfully simplify the case, it impacts only one type of monetary relief. Regardless of how *AMG* is decided, Plaintiffs need discovery to establish liability, to determine the scope of the permanent injunction, and to assess consumer redress and other relief under Section 19 and the applicable Utah statutes. In this court's prior decision denying the requested stay pending *Liu*, the court stated that "even if the Section 13(b) case was before the Supreme Court, Plaintiffs are entitled to pursue discovery on its other claims and remedies." The court continues to believe this is true. There is no basis for staying discovery on the Division's state law claims, and the FTC is entitled to discovery on Zurixx's liability under the FTC Act and on remedies other than equitable monetary relief.

Defendants face significant financial exposure under Section 19 of the FTC Act because it allegedly sold more than $136 million in coaching sessions and other real estate products via telemarketing. Section 19 is not at issue in *AMG*. The Utah state law claims likewise give rise to substantial monetary liability. Regardless of *AMG*'s outcome, Plaintiffs need substantial discovery into the total amount of consumer loss. This is not a case where the action will be mooted by the Supreme Court decision.

The Supreme Court's decision in *AMG* will certainly clarify the issue in this case relating to what equitable monetary relief is available under Section 13(b). However, it is questionable as to whether the potential efficiencies the knowledge regarding equitable relief could bring to the discovery process in this case outweigh the delay in such a factually complex case. The Spangler

Defendants' motion analyzed above demonstrates that Plaintiffs' have significant discovery to complete to fully understand the interrelated and overlapping business structures of all the Defendants. In fact, discovery could disclose more entities or parties who need to be included. This type of discovery should happen sooner rather than later. There is no good reason why the legal determination regarding the extent of equitable monetary relief should delay this type of discovery. When the Supreme Court issues its determination, the parties should be in a position to immediately apply it to the facts of this case. The parties should not wait to get the Supreme Court's decision and then go about conducting the extensive discovery that is necessary in the case.

The factual intricacies of this case must be uncovered on a timely basis for these governmental agencies to provide relief to consumers, which is their purpose in bringing this action in the first place. The requested delay will make redress more difficult as consumers may move or even pass away during that time. Justice delayed could be justice denied for some consumers. The Zurixx Defendants' interest in delay as a possible tactic to deny some consumers their redress cannot be sanctioned by the court.

A halt to all proceedings in this case would prejudice Plaintiffs, injured consumers, and third parties seeking to sue or continue litigation against Defendants. The discovery Defendants seek to stay goes well beyond the discrete legal question of equitable monetary relief at issue in *AMG*. A delay until the end of June 2021 on everything in the case is unnecessary and runs the risk of lost evidence. Moreover, the stipulated injunction imposes a stay on all actions against the receivership entities. These lawsuits cannot be further stayed. And the Receiver's ancillary lawsuits for alleged violations of Utah's Voidable Transfer Act that are all pending before the

11

court have nothing to do with the issue in *AMG* and should proceed.  The longer the receivership continues, the greater the expenses the Receiver will incur, which decreases the funds available to distribute to consumers.

The Zurixx Defendants also claim that the case should be stayed because the decision in *AMG* will inform settlement.  However, the parties will be in the best position possible to settling the matter after *AMG* is decided if they have conducted the necessary discovery on all the claims and issues in the case to know what is at stake.  The amounts potentially at issue on other claims could be more than Defendants can pay.  Defendants also claim that they will litigate the case differently based on the size of the potential damages.  But the difference between litigating a $200 million case and a $500 million case is not significant–as is already apparent, the case will be heavily litigated.

Being required to defend a lawsuit, without more, does not constitute a clear case of hardship or inequity.  Under the Scheduling Order in this case, expert discovery does not close until December 3, 2021.  Defendants' expert reports are not due until October 11, 2021, several months after the end of the Supreme Court term.  The attorneys in this case should be able to allocate their time between fact discovery and expert discovery to efficiently move the case forward pending the decision in AMG.  The court concludes that the Zurixx Defendants have failed to make a clear case of hardship or inequity if the stay is denied.  Defendants' speculation about saving indeterminate expenses if the stay is granted do not outweigh the significant prejudice to the Plaintiffs, consumers, and the public.

Based on the above reasoning, the court concludes that a stay of this case is not warranted pending the Supreme Court's decision in *AMG*.  The court, therefore, denies the Zurixx

Defendants' Motion to Stay.

### Zurixx Defendants' Motion for Relief from Stipulated Preliminary Injunction

Pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, the Zurixx Defendants move for relief from the Stipulated Preliminary Injunction Order and request that the briefing on that motion be stayed. The Zurixx Defendants ask the court to relieve them from all obligations and restrictions imposed upon them by the Stipulated Preliminary Injunction because the injunction may be rendered unnecessary or unlawful by the United States Supreme Court in the pending *AMG* case.

The Zurixx's Defendants seek relief from the preliminary injunction based on the Supreme Court's grant of certiorari, but the Supreme Court's grant of certiorari does not change the binding law in the Tenth Circuit that the preliminary injunction is based upon. Unless and until the Supreme Court overrules *FTC v. Freecom Communications, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005) and *FTC v. Loanpointe, LLC*, 525 Fed. Appx. 696, 699 (10th Cir. 2013) (unpublished), these cases are binding law and provide Defendants with no basis for asking for relief from the preliminary injunction order.

Rule 60(b) of the Federal Rules of Civil Procedure does not require the Zurixx Defendants to bring a motion in anticipation of a change in the law. The preliminary judgment order by its very title is not a final order and Rule 54(b) of the Federal Rules of Civil Procedure provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

Moreover, there is no basis for bringing the motion and asking for the briefing of the motion to be stayed. The motion is premature and has no merit until such time as there is a change in the law. At such time, the Zurixx Defendants would have a basis for bringing a motion. In fact, if the law changes, the court expects that the parties would engage in discussions as to the proper revision of the stipulated Preliminary Injunction Order in light of the change in the law. There is no reason for a motion to sit on the court's docket until June 2021 when it can be filed at that time, if necessary.

Accordingly, the court denies the Zurixx Defendants' Motion for Relief from Stipulated Preliminary Injunction Order and Motion to Stay Briefing.

## CONCLUSION

Based on the above reasoning, the Spangler Defendants' Motion to Dismiss [ECF No. 168] is DENIED, the Zurixx Defendants' Motion to Stay Proceedings Pending Supreme Court Cases [ECF No. 169] is DENIED; and the Zurixx Defendants' Motion for Relief from Stipulated Preliminary Injunction Order and Motion to Stay Briefing [ECF No. 198] is DENIED.

DATED this 24th day of November, 2020.

BY THE COURT:

Dale A. Kimball,
United States District Judge