UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION and UTAH DIVISION OF CONSUMER PROTECTION,<br><br>Plaintiffs,<br><br>v.<br><br>ZURIXX, LLC, *et al.*,<br><br>Defendants. | **MEMORANDUM DECISION REGARDING COST OF COMPLIANCE FOR SUBPOENA TO MATT DAVIS**<br><br>Case No. 2:19-cv-00713-DAK-DAO<br><br>District Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiffs' Short Form Motion to Compel Nonparty Matt Davis to Produce Documents in Compliance with Rule 45 Subpoena ("Mot.," Doc. No. 218). In his opposition, Mr. Davis asked the court to order Plaintiff Federal Trade Commission ("FTC") to bear the full cost of compliance with the subpoena. (Opp'n to FTC's Short Form Mot. to Compel ("Opp'n") 1, Doc. No. 223.) After a hearing on February 24, 2021, the court granted Plaintiffs' motion to compel in part and ordered Mr. Davis to comply with the subpoena as modified by the court's order, but reserved ruling on the issue of which party should bear the cost of compliance with the subpoena pending supplemental briefing. (Doc. No. 228.) Upon review of this supplemental briefing, for the reasons stated below, the court orders that Mr. Davis shall be responsible for the cost of complying with the subpoena.

BACKGROUND

Plaintiffs FTC and Utah Division of Consumer Protection brought this action against Zurixx LLC and related entities and individuals (the "Zurixx Defendants"), alleging they

1

marketed and sold real estate investment products and services based on false and unsubstantiated claims that consumers would earn thousands of dollars in profits. (*See* Second Am. Compl. ¶¶ 6–14, Doc. No. 219.) According to Plaintiffs, Mr. Davis was a principal speaker at Zurixx's sales events and received at least $3 million in compensation. (Mot. 2, Doc. No. 218.) Mr. Davis is not a defendant in this case. However, he is a defendant in a related case brought by the court-appointed receiver, seeking to recover the funds transferred to him by the Zurixx Defendants. *See Broadbent v. Davis et al*, 2:20-cv-00545-DAK-DAO (D. Utah, filed July 31, 2020) ("Receiver Action").

## LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure requires the party or attorney issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). It also requires an order commanding compliance with a subpoena to "protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii); *see also Rhea v. Apache Corp.*, 833 F. App'x 186, 190 (10th Cir. 2020) (unpublished) (confirming this rule is mandatory). "[T]he court must first determine what expenses resulted from compliance, and then whether those expenses are significant." *N.M. Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, No. CV 12-526 MV/GBW, 2016 WL 10296569, at *1 (D.N.M. May 11, 2016) (unpublished). "If the expenses are significant, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'" *Id.* (citation omitted).

In determining whether the cost of compliance should be shifted under Rule 45, district courts in this circuit have considered: (1) whether the nonparty has an interest in the outcome of

2

the underlying litigation; (2) whether the nonparty can more readily bear the cost than the requesting party, and (3) whether the litigation is of public interest. *See, e.g.*, *Mylan Inc. v. Analysis Grp., Inc.*, No. 18-mc-209-DDC-TJJ, 2019 U.S. Dist. LEXIS 17265, at *2 (D. Kan. Feb. 4, 2019) (unpublished) (noting this "widely-applied standard"); *W. Convenience Stores, Inc. v. Suncore Energy (U.S.A.) Inc.*, No. 11-cv-01611-MSK-CBS, 2014 WL 1257762, at *80 (D. Colo. March 27, 2014) (unpublished); *In re Application of Michael Wilson & Partners, Ltd*, No. 06-cv-02575-MSK-KMT, 2012 U.S. Dist. LEXIS 72963, at *14 (D. Colo. Mar. 19, 2012) (unpublished). Courts have also considered the scope of discovery and the extent to which the nonparty was required to separate responsive information from privileged or irrelevant material, and the reasonableness of the cost of production incurred. *See, e.g.*, *Lambland, Inc. v. Heartland Biogas*, LLC, No. 18-cv-01060-RM-KLM, 2019 U.S. Dist. LEXIS 198426, at *8 (D. Colo. Nov. 15, 2019) (unpublished); *In re Application of Michael Wilson & Partners, Ltd*, 2012 U.S. Dist. LEXIS 72963, at *27. The party seeking an award of cost bears the burden of showing the necessity of the cost incurred. *In re Application of Michael Wilson & Partners, Ltd*, 2012 U.S. Dist. LEXIS 72963, at *18.

DISCUSSION

**A. Amount and Reasonableness of Cost**

Plaintiffs' subpoena to Mr. Davis includes forty requests for production of documents and detailed instructions for electronically stored information ("ESI"). (*See* Ex. 2 to Mot., Doc. No. 218-3.) Before filing the motion to compel, Plaintiffs agreed to several accommodations to reduce Mr. Davis's burden and expense, including agreeing to a staggered return and privilege log; agreeing to accept native files to eliminate vendor costs; offering FTC resources for a taint team to withhold privileged documents from the trial team to eliminate the cost of privilege

3

review; and narrowing the scope of several of the requests in response to Mr. Davis's objections. (Mot. 2–3, Doc. No. 218.) The court further narrowed the scope of the requests in its order granting in part the motion to compel. (Doc. No. 228.)

In his opposition to Plaintiffs' motion, Mr. Davis argued responding to the subpoena would require work by attorneys and an ESI firm to (1) identify and apply search protocols to his Gmail account; (2) search approximately 81.5 GB of electronic documents not including emails; (3) backup and search four years of text messages from his cell phone; and (4) review documents for responsiveness, confidentiality, and privilege. (Opp'n 2, Doc. No. 223.) Mr. Davis estimated the cost of compliance would be approximately $11,000, comprised of $5,500 for attorney fees and $5,500 for ESI cost. (*Id.*) However, Mr. Davis did not provide any affidavits or other evidence to support these estimates.

Despite the fact that the court narrowed the scope of the subpoena at the hearing, in post-hearing supplemental briefing, Mr. Davis more than doubled his estimate of the cost of compliance, to $23,808.25. (Supp'l Br. in Opp'n to FTC's Mot. to Compel ("Davis Supp'l Br.") 5, Doc. No. 230.) This included an estimated $12,956.25 to hire an ESI firm, $7,889.50 in attorney fees already incurred, and $2,962.50 in attorney fees to complete compliance. (*Id.* at 6.) In support of his increased estimate, Mr. Davis provided a declaration from his attorney and a cost proposal from an ESI firm. (Exs. 2–3 to Davis Supp'l Br., Doc. Nos. 230-2 & 230-3.)

Mr. Davis has failed to show his increased cost estimate is reasonable or necessary to comply with the subpoena. The attorney's declaration does not include billing records to support the attorney fees Mr. Davis claims he has already incurred. Instead, it includes a chart stating the total fees for three categories of legal work, without specifying which of Mr. Davis's attorneys completed the work at which billing rate, whether any work was completed by paralegals or

4

associates with a lower billing rate, or the date the work was completed. (Ex. 2 to Davis Supp'l Br., Decl. of Jason A. McNeill ("McNeill Decl.") ¶ 12, Doc. No. 230-2.) Without a more detailed breakdown, it is impossible to find this estimate is reasonable. As one example, the declaration estimates six hours of future work for "evaluation FTC subpoena and working with client and ESI to identify and gather documents for compliance" and one and one-half hours of future work for "evaluating and drafting subpoena objections and response." (*Id.* ¶ 12.) However, Mr. Davis has already objected to the subpoena, and the chart of past work lists four and one-half hours already spent on this category. (*Id.*) The declaration does not adequately explain the need for this category of future legal expenses.

The attorney declaration states the other $12,956.25 reflects the estimated cost for the third party ESI firm to carry out search protocols on approximately 95 GB of data, including document files, email accounts, and cell phone text messages. (*Id.* ¶¶ 24–25.) The declaration explains this amount is higher than the previous estimate because the ESI firm recently completed its upload of Mr. Davis's data, thereby giving it a known quantity of data to be searched. (*Id.* ¶ 26.) However, Mr. Davis's original estimate of $5,500 in ESI cost reflected a search of 81.5 GB of data not including emails. It is unclear why a search of 95 GB of data including emails and text messages would cost *more than double* the original estimate. The declaration does not adequately explain this.

For these reasons, Mr. Davis's estimate of $23,808.25 is neither reasonable nor supported by the evidence he provided with his supplemental briefing. Nevertheless, it is evident Mr. Davis has incurred and will incur at least some attorney fees and ESI cost in complying with the subpoena. Although Mr. Davis's original estimate of $11,000 is also largely unsupported, where

some cost will inevitably be incurred, the court accepts the original estimate as a more reasonable assessment of the necessary cost of compliance.

### B. Whether the Nonparty Has an Interest in the Litigation

Mr. Davis contends the outcome of this case will not impact him financially or affect the receiver's action against him. (Davis Supp'l Br. 3–4, Doc. No. 230.) He argues the receiver's action "does not turn on the facts at issue in the FTC enforcement action, but rather turns upon issues of Utah law regarding allegedly fraudulent transfers." (*Id.* at 4.)

Although the receiver asserts state law claims, these claims are based on allegations that Zurixx's business model was fraudulent and violated federal and state law, which are the same allegations Plaintiffs have made against the Zurixx Defendants in this case. (*See* Receiver Action, Compl. ¶¶ 18–22, 30, 38, 46, 52, Doc. No. 2.) Thus, whether Plaintiffs prevail on their claims against the Zurixx Defendants will directly affect whether the receiver may recover the approximately $3 million in funds which Mr. Davis allegedly received from the Zurixx Defendants. Further, the receiver was appointed based on the preliminary injunction entered in this case. Under these circumstances, Mr. Davis has a significant financial interest in this litigation even though he is not a party. This factor weighs against shifting the cost of compliance to the FTC.

### C. Whether the Nonparty Can More Readily Bear the Cost than the Requesting Party

Mr. Davis argues the $23,808.25 cost of compliance is an undue burden because his income from speaking at seminars has declined as a result of Zurixx ceasing operations and the COVID-19 pandemic. (Ex. 1 to Davis Supp'l Br., Declaration of Matt Davis ("Davis Decl.") ¶¶ 7–8, Doc. No. 230-1.) He states his total income for 2020 was $134,205.83, and he has not had

6

any substantial income since then. (*Id.* ¶ 11.) (He does not deny earning additional income since then, noting only that it is not "substantial," without defining what that means.) Mr. Davis argues the FTC is more readily able to bear the cost of compliance, citing its 2020 fiscal year budget request for consumer protection of more than $172 million. (Davis Supp'l Br. 4–5, Doc. No. 230.) Mr. Davis relies on *Simon v. United States*, 2017 U.S. Dist. LEXIS 212242 (D. Colo. March 8, 2017) (unpublished), in support of this argument.

Plaintiffs argue Mr. Davis is not entitled to cost-shifting merely because the FTC's annual budget exceeds his individual income. (Pls.' Supp'l Br. 3–4, Doc. No. 236.) They argue the court should, instead, weigh Mr. Davis's ability to pay against the fact that the FTC is a steward of taxpayer resources, citing *United States v. Cardinal Growth, L.P.*, No. 11 C 4071, 2015 U.S. Dist. LEXIS 22577 (N.D. Ill. Feb. 23, 2015) (unpublished).

In *Simon*, the district court stated "[a]rguing that any person or entity . . . is better able to absorb the costs of discovery than is the United States Government is nonsensical." 2017 U.S. Dist. LEXIS 212242, at *9. Nevertheless, the court acknowledged that "the government is funded by taxpayer dollars for which it has a duty of fiscal responsibility." *Id.* The court ultimately found splitting the cost of compliance between the nonparty and the government was appropriate. *Id.* In *Cardinal Growth*, the court concluded a compliance cost of more than $44,000 was not a "significant expense" relative to the substantial income of $2 million the nonparty had collected from the party defendant. 2015 U.S. Dist. LEXIS 22577, at *8. The court also noted shifting costs to the federal government would ultimately require taxpayers to foot the bill, and concluded this factor weighed against cost-shifting. *Id.* at *8–9.

Thus, neither case supports Mr. Davis's argument that the FTC should bear the full cost of compliance merely because its budget exceeds his individual income. If this were the rule,

7

any government agency issuing a subpoena to a nonparty individual would be required to bear the cost of compliance in nearly every instance. Instead, both cases support an approach where the nonparty's ability to pay is weighed against the government entity's fiscal responsibility to taxpayers. Likewise, the court is persuaded that comparing the cost of compliance to the amount the nonparty has received from the defendant party is appropriate in determining whether the cost is significant.

Here, the only evidence Mr. Davis provided regarding his ability to pay was his 2020 income. He provided no information about his assets. In fact, although he called the cost of compliance an "undue burden" in his declaration, he never asserted he was unable to bear the cost. In response to Mr. Davis's supplemental briefing, Plaintiffs submitted evidence Mr. Davis owns several properties in Utah and Puerto Rico (at least two with market values of more than a million dollars), as well as a financial stake in other valuable assets (such as a yacht). (Ex. 1 to Pls.' Resp. to Davis Supp'l Br., Decl. of FTC Investigator Diana F. Shiller ("Shiller Decl.") ¶ 10–16, Doc. No. 236-1). Regardless of whether this information is accurate, Mr. Davis has failed to show he is unable to bear the cost of compliance where he provided no information regarding his assets and merely stated his 2020 income. Further, Mr. Davis did not refute Plaintiffs' allegation that he received $3 million from the Zurixx Defendants. Even if the court were to accept the higher cost estimate provided by Mr. Davis, the cost of compliance is insignificant compared to the amount he received from the Zurixx Defendants.

Under these circumstances, Ms. Davis has not demonstrated he is unable to bear the cost of compliance or that such cost should be shifted to taxpayers. This factor weighs against shifting the cost of compliance to the FTC.

### D. Whether the Litigation is of Public Interest

This is a case brought by two government entities alleging the Zurixx Defendants operated a fraudulent business, causing hundreds of millions of dollars in consumer injury. This case is plainly of public interest, and Mr. Davis does not contest that this factor weighs against shifting the cost of compliance to the FTC.

* * *

The above factors, as a whole, weigh against shifting the cost of compliance to the FTC. This litigation is of public interest, Mr. Davis has a significant financial interest in the case, and he has not provided sufficient information to show he is unable to bear the cost of compliance. Further, Mr. Davis failed to show the increased cost estimate provided in his supplemental briefing is reasonable or necessary for compliance. Even if Mr. Davis's estimate were reasonable, the cost of compliance is a small fraction of the approximately $3 million he received from the Zurixx Defendants—an insignificant amount, comparatively. For these reasons, the court finds the cost of compliance is not significant and denies Mr. Davis's request to shift the cost of compliance to the FTC.

## CONCLUSION

The court ORDERS that Mr. Davis shall be responsible for the cost of complying with the subpoena.

DATED this 2nd day of July, 2021.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge